**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-2441

SUMMITBRIDGE NATIONAL INVESTMENTS III, LLC,

    Creditor - Appellant,

 v.

OLLIE WILLIAM FAISON,

    Debtor - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, Chief District Judge. (5:17-cv-00384-BO)

Argued: October 30, 2018              Decided: February 8, 2019

Before FLOYD and HARRIS, Circuit Judges, and Donald C. COGGINS, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Reversed and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Floyd and Judge Coggins joined.

**ARGUED:** Christopher Paul Schueller, BUCHANAN INGERSOLL & ROONEY PC, Pittsburgh, Pennsylvania, for Appellant. John Arlington Northen, NORTHEN BLUE, LLP, Chapel Hill, North Carolina, for Appellee. **ON BRIEF:** Vicki L. Parrott, NORTHEN BLUE, LLP, Chapel Hill, North Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

The question in this appeal is whether the Bankruptcy Code bars a creditor from asserting an unsecured claim for attorneys' fees, if those fees are incurred after the filing of a bankruptcy petition but guaranteed by a pre-petition contract. We join other federal courts of appeals in holding that the Code does not preclude such claims. Accordingly, we reverse the contrary determination of the district court and remand for further proceedings.

## I.

From 2003 through 2012, Branch Banking and Trust Company ("BB&T") loaned $2.1 million to Ollie William Faison. To effectuate the loans, Faison signed three promissory notes secured by deeds of trust for farmland that Faison owned in North Carolina. Faison agreed that if the notes were placed with an attorney for collection, he would pay "all costs of collection, including but not limited to reasonable attorneys' fees." J.A. 73, 101, 129.

On January 3, 2014, Faison filed a petition for relief under Chapter 11 of the Bankruptcy Code. During the ensuing bankruptcy proceedings, BB&T filed three proofs of claims – documents providing proof of a right to payment – for the outstanding principal and interest due on its promissory notes as of the date of Faison's petition. Those three claims were entitled to preferential treatment under the Code because the promissory notes underlying them were secured by collateral – namely, Faison's farmland in North Carolina. *See Welzel v. Advocate Realty Invs., LLC (In re Welzel)*, 275

F.3d 1308, 1318 (11th Cir. 2001) (en banc) (describing the provisions of the Code that give preferential treatment to secured claims). That preferential treatment meant that BB&T's claims would be satisfied from the value of the farmland before any distributions were made to lower-priority unsecured claims. *See Stubbs & Perdue v. Angell (In re Anderson)*, 811 F.3d 166, 168 (4th Cir. 2016).

BB&T assigned its interest in the promissory notes – and in turn, the three bankruptcy claims based on those notes – to SummitBridge National Investments III, LLC ("SummitBridge") in January 2015. Now holder of the notes, SummitBridge began to defend the three claims in Faison's bankruptcy proceedings, incurring attorneys' fees in the process.

Almost two years after BB&T assigned its claims to SummitBridge, Faison proposed a plan for repaying his creditors, ultimately approved by the bankruptcy court. The plan treated SummitBridge's three claims as one aggregate secured claim for $1,715,000, the value of the farmland securing the three notes. That amount was enough to cover the outstanding principal and pre-petition interest on the three notes, as well as a portion of SummitBridge's post-petition interest and attorneys' fees. To the extent that SummitBridge had incurred excess attorneys' fees not covered by the farmland's value, the plan made clear, SummitBridge could file an unsecured claim to recover those fees.

SummitBridge did just that, filing the claim at issue here: an unsecured claim against Faison's estate for the remainder of the post-petition attorneys' fees it had incurred. Faison objected to SummitBridge's claim on two alternative grounds. First, Faison argued that SummitBridge's underlying contractual claim for attorneys' fees was

3

unenforceable under North Carolina law because SummitBridge had failed to comply with state-law notice requirements. And second, Faison raised the federal-law issue we address today, arguing that "the Bankruptcy Code does not provide for allowance of an unsecured claim for post-petition attorneys' fees or costs." J.A. 265.

The bankruptcy court addressed only Faison's federal-law argument, agreeing with him that the Code does not allow creditors like SummitBridge to assert unsecured claims for post-petition attorneys' fees. SummitBridge appealed the bankruptcy court's order to the district court, and the district court affirmed.

This timely appeal followed.

## II.

"When considering an appeal from a district court acting in its capacity as a bankruptcy appellate court," this court conducts "an independent review of the bankruptcy court's decision, reviewing factual findings for clear error and legal conclusions de novo." *Dep't of Soc. Servs., Div. of Child Support Enf't v. Webb*, 908 F.3d 941, 945 (4th Cir. 2018) (internal quotation marks omitted). The sole question before us today is one of law: Under the Code, may a creditor assert an unsecured claim for post-petition attorneys' fees based on a pre-petition promissory note?

### A.

As the bankruptcy and district courts recognized, we are not the first courts to confront this issue. On the contrary: Bankruptcy and district courts long have wrestled with this question, disagreeing as to whether creditors may assert unsecured claims for

post-petition attorneys' fees based on pre-petition contracts. *See In re Augé*, 559 B.R. 223, 229 (Bankr. D.N.M. 2016) (citing cases).

In 2007, however, the Supreme Court provided important guidance in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443 (2007). There, the Court rejected a Ninth Circuit rule disallowing claims for post-petition attorneys' fees under one set of circumstances – specifically, where those post-petition fees were incurred while litigating issues of federal bankruptcy law. 549 U.S. at 445. In passing on that particular bar on claims for post-petition attorneys' fees, the Court applied a presumption of broader significance: "[W]e generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Id.* at 452. Because nothing in the Code disallowed claims for post-petition attorneys' fees that are incurred in connection with federal bankruptcy law issues, the Court concluded, the Ninth Circuit's rule was unfounded. *Id.* at 452–54.

The *Travelers* Court stopped short of deciding whether the Code might provide some different and independent basis for disallowing post-petition attorneys' fees altogether. *Id.* at 456. But as other courts have recognized, the Supreme Court's "analysis and rationale" in *Travelers* is "equally applicable to post-petition costs arising out of pre-petition contracts more generally." *Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d 143, 147 (2d Cir. 2009). And in the years since *Travelers* was decided, both the Second and Ninth Circuits have concluded that there is no basis in the Code for barring unsecured claims for post-petition attorneys' fees arising out of pre-petition contracts. *Id*.

5

at 146–49; *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 839–45 (9th Cir. 2009).[1]

## B.

We turn now to the text of the Code, and – as instructed by *Travelers* – consider whether it *expressly disallows* unsecured claims for post-petition attorneys' fees based on valid pre-petition contracts. Faison argues, and the bankruptcy and district courts agreed, that creditors are barred from asserting such claims by two provisions of the Code: § 502(b) and § 506(b). We take those provisions in turn, and like our sister circuits, conclude that neither expressly disallows a creditor like SummitBridge from asserting an unsecured claim for post-petition attorneys' fees based on a valid pre-petition contract. *Accord Ogle*, 586 F.3d at 146–49; *In re SNTL Corp.*, 571 F.3d at 839–45.

### 1.

We begin with § 502 of the Code, which, as its title explains, governs the "[a]llowance of claims or interests" in bankruptcy proceedings. When, as here, a party like Faison objects to a creditor's claim, then § 502(b) provides that "the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the

---

[1] Indeed, even before *Travelers*, courts of appeals had begun to converge on that result. Both the Eleventh and Ninth Circuits had held that over-secured creditors can assert unsecured claims for post-petition attorneys' fees, and had assumed that unsecured and under-secured creditors can do so, as well. *In re Welzel*, 275 F.3d at 1319; *Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.)*, 789 F.2d 674, 678 (9th Cir. 1986). And the Sixth Circuit had held that at least where solvent debtors are concerned, the Code permits unsecured claims for post-petition attorneys' fees. *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 683 (2006).

filing of the petition, and shall allow such claim in such amount" unless one of nine enumerated exceptions applies. 11 U.S.C. § 502(b). Section 502(b), in other words, does not bar SummitBridge from recovering post-petition attorneys' fees, so long as two conditions are met: First, SummitBridge must have had a "claim" for those fees as of the petition date; and second, that claim must not fall within one or more of the nine enumerated exceptions. *Cf. Travelers*, 549 U.S. at 449–50 (explaining that a claim within the meaning of the Code must be allowed under § 502(b) unless one of the nine enumerated exceptions applies). Faison does not dispute that none of the nine exceptions is implicated here. So the only question is whether SummitBridge had a "claim" under the Code for post-petition attorneys' fees as of the petition date.

Faison's position is that because no attorneys' fees were incurred until *after* bankruptcy proceedings began in this case, SummitBridge could not have had a valid "claim" for those fees on "the date of the filing of the petition." We disagree. It is true that the right to payment of attorneys' fees under Faison's promissory notes was contingent on a future, post-petition event – namely, the notes being placed with an attorney for collection. But the Code defines "claim" broadly, and expressly includes "right[s] to payment" that are "contingent." 11 U.S.C. § 101(5)(A) (defining "claim" as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

7

equitable, secured, or unsecured").[2] What matters is that the *right* to those fees arose pre-petition, when Faison signed the promissory notes in question. That is enough, as the Ninth Circuit has explained, to make the fees "pre[-]petition in nature, constituting a contingent pre[-]petition obligation that bec[omes] fixed post[-]petition when the fees [are] incurred." *In re SNTL Corp.*, 571 F.3d at 844 (quoting 5 Collier on Bankruptcy ¶ 553.03[1][i] (15th ed. 2007)).

Faison resists this straightforward conclusion by pointing to the § 502(b) requirement that a bankruptcy court "determine the amount of [the] claim . . . as of the date of the filing of the petition," and allow the claim "in such amount." According to Faison, because post-petition fees, by definition, have not been incurred "as of the date of the filing of the petition," their "amount" cannot be "determine[d]" on that date – unless, that is, the "amount" is deemed to be zero. For two reasons, we again must disagree.

First, we think a fair reading of the Supreme Court's decision in *Travelers* precludes this argument. Like the fees here, the attorneys' fees at issue in *Travelers* also were incurred post-petition, and, as a result, the amount of those fees also was uncertain as of the petition date. *See* 549 U.S. at 446–47. Under Faison's reading of § 502(b), that

---

[2] A "right to payment" under this definition "usually refer[s] to a right to payment recognized under state law." *Travelers*, 549 U.S. at 451. For purposes of this appeal, the parties do not dispute that SummitBridge had a valid and enforceable right to payment of attorneys' fees under North Carolina law: In the promissory notes underlying each loan, Faison agreed to "pay, in addition to principal, interest and late fees, if any, all costs of collection, including but not limited to reasonable attorneys' fees." J.A. 73, 101, 129. On remand, however, Faison may pursue his argument that SummitBridge's contractual right to attorneys' fees is unenforceable because SummitBridge failed to satisfy state-law notice requirements.

8

would be enough to end the *Travelers* case: Because no "amount" for the purported claim – other than zero – could be determined by the bankruptcy court on the date of the petition, there would be no valid "claim" at all. But the Supreme Court did not resolve the case on that ground. Instead, it went on to consider whether any of the nine enumerated *exceptions* to § 502(b) applied – an analysis that would be wholly unnecessary if post-petition fees could not constitute "claims" at all – and, finding that none did, held that claims for post-petition attorneys' fees incurred in connection with federal bankruptcy litigation are *not* disallowed under § 502. *See id.* at 449–54. As the Second Circuit has explained, in rejecting the same argument that Faison raises here, *Travelers* "proceeds along lines that, reasonably extended, would suggest . . . that section 502(b)'s requirement – that the court 'shall determine the amount of such claim . . . as of the date of the filing of the petition' – does not bar recovery of post-petition attorneys' fees." *Ogle*, 586 F.3d at 147.

Second, we think Faison's argument is inconsistent with the whole of § 502. If it were the case, as Faison contends, that a "claim" with no value on the petition date cannot be allowed under § 502(b) – or may be allowed only in the amount of zero – then there would be no need for § 502(b)(2), an enumerated exception to § 502(b) that specifically disallows claims for "unmatured interest." *See* 11 U.S.C. § 502(b)(2). Nor can Faison's position be squared with § 502(c), which expressly directs bankruptcy courts to "estimate[] for purpose of allowance" the value of claims that are contingent or unliquidated, to avoid undue delay in the administration of a bankruptcy. *See id.* § 502(c). If, as Faison would have it, the value of a "claim" must be fixed as of the petition

9

date, then there would be no need for such estimates. And, indeed, Faison concedes that the bankruptcy court could have used that very provision to estimate the attorneys' fees at issue in this case.

In sum, like our sister circuits, we can find nothing in § 502(b) that expressly disallows unsecured claims for post-petition attorneys' fees. *See Ogle*, 586 F.3d at 147; *In re SNTL Corp.*, 571 F.3d at 844.

2.

Faison next contends that a different provision of the Code – § 506(b) – disallows SummitBridge's unsecured claim for post-petition attorneys' fees. Unlike § 502, § 506, titled "[d]etermination of secured status," does not speak directly to the allowance or disallowance of claims. But § 506(b) does refer to attorneys' fees, providing that creditors with over-secured claims – that is, creditors with collateral that exceeds the amount of their claims – may add to their secured claims both interest and reasonable attorneys' fees:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). That § 506(b) expressly allows creditors with over-secured claims to add attorneys' fees to their claims, Faison argues, implies that creditors who are unsecured or, as here, under-secured may *not* assert such claims.

The first problem with Faison's position is that this kind of argument by negative inference cannot carry the day under *Travelers*. The *Travelers* Court made clear that

10

claims enforceable under state law are presumed allowable, and that this presumption may be overcome only by an *express* disallowance. *See* 549 U.S. at 452 ("[W]e generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed."). And § 506(b) never mentions, let alone expressly disallows, unsecured claims for post-petition attorneys' fees. *See* 11 U.S.C. § 506(b).[3] A section that is "completely silent with regard to the allowance/disallowance issue" at hand, *In re Welzel*, 275 F.3d at 1317, cannot rebut the *Travelers* presumption. It was "decisive in *Travelers* that the Code says *nothing* about unsecured claims for contractual attorney's fees incurred while litigating issues of bankruptcy law . . . [and] it is decisive here that [§ 506(b)] says nothing about such fees incurred litigating things *other* than issues of bankruptcy law." *Ogle*, 586 F.3d at 148 (internal quotation marks and citation omitted).

The second problem with Faison's argument is the reason that § 506(b) is silent on this point: Section 506(b) has nothing to do with the allowance or disallowance of claims. That function, as described above, is performed by § 502, aptly titled "[a]llowance of claims or interests." What § 506 is concerned with, as its title makes equally clear, is the "secured status" of claims already allowed or presumed allowed. *See*

---

[3] Nor, we note, does § 506(b) mention *post-petition* attorneys' fees, as opposed to pre-petition fees. *See In re SNTL Corp.*, 571 F.3d at 841 (citation omitted). Nothing about § 506(b), in other words, can be read to address the distinction between pre- and post-petition fees that is at the heart of Faison's case. Instead, on Faison's reading of § 506(b), it appears that pre-petition as well as post-petition attorneys' fees would be excluded from the claims of all but over-secured creditors, *see id.* – a result that Faison neither acknowledges nor defends.

11

11 U.S.C. § 506 ("Determination of secured status").[4] Section 502, in other words, answers "the threshold question of whether a claim should be allowed or disallowed," while "§ 506 deals with the entirely different, more narrow question of whether certain types of claims should be considered secured or unsecured." *In re Welzel*, 275 F.3d at 1318; *see also In re SNTL Corp.*, 571 F.3d at 842. That more narrow question is important, to be sure; in specifying that over-secured creditors may treat as *secured* their claims for reasonable attorneys' fees, § 506(b) gives those claims priority over other creditors' unsecured claims. *See In re Welzel*, 275 F.3d at 1318 (describing the Code's preferential treatment of secured claims).[5] But § 506(b) does not address baseline allowability, and Faison's effort to read into that provision a disallowance of unsecured claims for post-petition attorneys' fees "incorrectly conflate[s]" the functions of § 506 and § 502. *In re SNTL Corp.*, 571 F.3d at 842; *see also In re Welzel*, 275 F.3d at 1317 ("[Section] 506 is meant to address 'a number of important rules specifying the

---

[4] The text of § 506, like its title, makes clear that the role of § 506 is limited to classifying as secured or unsecured claims that already are presumed allowed. Under § 506(a), "[a]n *allowed* claim of a creditor secured by a lien on property in which the estate has an interest . . . is a *secured* claim to the extent of the value of such creditor's interest in the estate's interest in such property" (emphasis added). And under § 506(b), the provision addressing over-secured claims on which Faison focuses, "[t]o the extent that an *allowed* secured claim is secured by property the value of which . . . is greater than the amount of such claim," the secured claim includes "reasonable fees, costs, or charges" (emphasis added).

[5] For that reason, we do not think it is the case, as the district court suggested and Faison echoes on appeal, that allowing "SummitBridge's unsecured claim for post-petition fees under § 502 arguably renders the language of § 506(b) superfluous." J.A. 409. Section 506(b) does not speak to allowability, but it does serve a significant function by setting out the circumstances under which an allowed claim for attorneys' fees may be treated as secured.

12

determination of the secured status of a claim, [not] the allowance or disallowance of the underlying claim itself.'" (alteration in original) (quoting 4 Collier on Bankruptcy ¶ 506.01 (15th ed. 2001))).

It is no surprise, then, that when Congress intends to disallow a claim for attorneys' fees, it does so in § 502, not § 506. *See In re SNTL Corp.*, 571 F.3d at 841 ("If Congress . . . had wanted to disallow claims for post[-]petition attorneys' fees, the logical place for it to have done so was surely in 11 U.S.C. § 502(b)."). Section 502(b), as described above, provides for the allowance of claims, but also enumerates nine exceptions. And among those exceptions is one for a "claim . . . for services of an insider or *attorney* of the debtor" where the claim "exceeds the reasonable value of such services." 11 U.S.C. § 502(b)(4) (emphasis added). Congress, in other words, knows how to draft a provision that expressly disallows a claim for certain attorneys' fees. And as the Supreme Court explained in *Travelers*, the "absence of an analogous provision excluding" claims for a different category of fees – in this case, unsecured claims for post-petition fees – is strong evidence that the Code does not expressly disallow those claims. 549 U.S. at 453.

Finally, like other courts to consider this issue, we are unpersuaded by Faison's citation to *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 372 (1988), and its reference to § 506(b) as "denying under[-]secured creditors post[-]petition interest on their claims." As the wording on which Faison relies makes clear, the Court in *Timbers* was addressing the allowability of claims for post-petition *interest*, not attorneys' fees. And that distinction matters, because claims for

13

unmatured interest (unlike attorneys' fees) are expressly *disallowed* under § 502(b)(2), so that post-petition interest (unlike attorneys' fees) may be recovered only if § 506(b) creates a "limited exception" – for over-secured creditors – to that general rule against allowance. *Ogle*, 586 F.3d at 148. As other courts have explained at length, because § 502(b) does "not contain a similar prohibition against [allowance of] attorneys' fees, the comparison between the current issue and that presented in *Timbers* is not persuasive." *In re SNTL Corp.*, 571 F.3d at 844; *see also Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 682 (6th Cir. 2006).

Again, we emphasize that under *Travelers*, the question before us is whether there is anything in § 506(b) that could be deemed an express disallowance of unsecured claims for post-petition attorneys' fees. Like the Second and Ninth Circuits, we think there is not. *See Ogle*, 586 F.3d at 147–48; *In re SNTL Corp.*, 571 F.3d at 841–43.

## C.

Faison's final argument is an appeal to policy considerations. Faison focuses on SummitBridge's status as a *secured* creditor, guaranteed recovery on its principal. It would be unfair, Faison argues, to allow SummitBridge also to assert unsecured claims for attorneys' fees, because those claims would reduce the pool of assets available to wholly unsecured creditors who have yet to recover any principal, let alone fees. And that result, Faison finishes, would be inconsistent with a central purpose of the Code, which is to secure equality among similarly situated creditors.

14

As a threshold matter, we agree with the courts that have considered similar policy arguments for barring claims for post-petition attorneys' fees: Because the text of the "Bankruptcy Code itself provides the answer to this issue (by not specifically disallowing post[-]petition fees)," we must defer to Congress's chosen policy, *In re SNTL Corp.*, 571 F.3d at 845, and may not reach "a contrary result based on equitable considerations," *In re Welzel*, 275 F.3d at 1318. We add only that Faison's particular argument from fairness – that only unsecured creditors, and not secured (but under-secured) creditors like SummitBridge, should be allowed to assert unsecured claims for post-petition attorneys' fees – itself has no basis in the text of the relevant Code provisions. What matters under § 502 and § 506(b) is the status of a given claim, not the status of the creditor asserting it: Under § 502, it is a "claim" that is allowed or disallowed, *see* 11 U.S.C. § 502(b) (directing that a "claim" shall be allowed unless subject to an enumerated exception), and under § 506(b), an "allowed secured claim" will include reasonable attorneys' fees under specified circumstances, *see id.* § 506(b). Faison's effort to differentiate between types of creditors, in other words, brings his policy argument not one but two steps away from the statutory text.

And in any event, the equitable considerations here are not as one-sided as Faison suggests. It is true, as Faison argues, that if otherwise secured creditors recover on unsecured claims for post-petition attorneys' fees, those payments may come at the expense of unsecured creditors' ability to recover fully on their claims to principal. But a basic tenet of bankruptcy law is that secured creditors are privileged over unsecured creditors. *See In re Welzel*, 275 F.3d at 1319. And Faison's rule would flip this privilege

on its head: By allowing unsecured but not under-secured creditors to assert claims for post-petition attorneys' fees, it would put "unsecured creditors . . . in a *more* protected position than a group of secured creditors." *Id.* (emphasis added).

Faison's policy argument also upsets a second basic principle of federal bankruptcy law: "that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law," *Travelers*, 549 U.S. at 450–51 (internal quotation marks omitted). Allowing creditors, like SummitBridge, who have bargained specifically for attorneys' fees under state law to enforce those rights in bankruptcy is fully consistent with that principle, even if it reduces the pool of assets otherwise available. Those creditors, it is presumed, "gave value, in the form of a contract term favorable to the debtor . . . in exchange for the [attorneys' fees] provision." *Ogle*, 586 F.3d at 149 (internal quotation marks omitted). So allowing them to assert unsecured claims for those fees, far from "providing an undeserved bonus for one creditor at the expense of others," simply "effectuates the bargained-for terms of the loan contract." *Id.* (internal quotation marks omitted). And in the end, if there is any tension between this policy of vindicating contract rights enforceable under state law and other bankruptcy principles, "it is the province of Congress," not the courts, to adjust accordingly. *In re SNTL Corp.*, 571 F.3d at 845.

## III.

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

16

*REVERSED AND REMANDED*

17